UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                   :

TONY MORTON

                  Petitioner,                 :  13 Civ. 3985 (AT) (GWG)

       -V.-                                :  <u>REPORT AND RECOMMENDATION</u>

ADA PEREZ, SUPERINTENDENT,         :
DOWNSTATE CORRECTIONAL FACILITY,
                                            :

                 Respondent.            :

                                          :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

       Tony Morton, currently an inmate at the Downstate Correctional Facility in Fishkill, New York, brings this <u>pro se</u> petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Morton is currently serving a 12-year prison sentence after pleading guilty to Criminal Possession of a Weapon in the Third Degree, Bail Jumping in the Second Degree, and Robbery in the First Degree. For the following reasons, Morton's petition should be denied.

I.  <u>BACKGROUND</u>

    A.  <u>The First Guilty Plea</u>

       Morton was indicted by a grand jury on August 29, 2006, in Bronx County for Criminal Possession of a Weapon in the Third Degree. <u>See</u> Declaration in Opposition to Petition for a Writ of Habeas Corpus, filed Sept. 30, 2013 (Docket # 9) ("Resp. Decl."), ¶ 4. Morton pled guilty to this charge on September 8, 2006. <u>See</u> Transcript of Proceedings Held Before the Honorable Steven Barrett, dated Sept. 8, 2006 (annexed as Ex. 1 to Resp. Decl.) ("9/8/06 Plea Tr."). Morton was represented during this plea hearing by attorney Antonia Codling of the Legal Aid Society. (9/8/06 Plea Tr. 2). Justice Barrett stated that Morton could receive "[b]etween

five and seven years indeterminate, plus post release supervision."  (9/8/06 Plea Tr. 3).

However, according to the terms of a plea agreement reached with the District Attorney, Morton

would be permitted to withdraw his guilty plea and plead to a lesser felony or misdemeanor if he

cooperated with the District Attorney's Office in investigating firearm crimes.  (9/8/06 Plea Tr.

3).  At the plea hearing, the Assistant District Attorney, Gregory Cho, made clear that the

District Attorney would be "released from any obligations of the agreement" and could "petition

[the] Court to revoke [Morton's] bail status and be remanded" if, among other things, Morton

"attempted to commit any other crimes or committ[ed] any crimes."  (9/8/06 Plea Tr. 4).  Morton

indicated that he understood this provision of the plea agreement and pled guilty to third-degree

criminal possession of a weapon in violation of N.Y. Penal Law § 265.02(4).  (9/8/06 Plea Tr. 4-

6).  Justice Barrett released Morton on his own recognizance.  (9/8/06 Plea Tr. 11-12).

      B.  <u>Additional Indictments and the Second Guilty Plea</u>

On July 19, 2007, a grand jury indicted Morton for Bail Jumping in the Second Degree

(the "Bail Jumping Indictment") for failing to appear in court on February 9, 2007.  <u>See</u> Resp.

Decl. ¶ 6.  On August 3, 2007, a grand jury indicted Morton on a number of counts of Robbery

in the First, Second, and Third Degrees, Grand Larceny in the Third and Fourth Degrees,

Burglary in the Second and Third Degrees, Petit Larceny, Criminal Possession of a Weapon in

the Fourth Degree, and Menacing in the Second Degree based on events occurring on or about

August 6, 2006 (the "Robbery Indictment").  <u>Id.</u> ¶ 7.

On February 26, 2008, now represented by attorney Christopher Spellman of the Legal

Aid Society, Morton again appeared before Justice Barrett.  <u>See</u> Transcript of Proceedings Held

Before the Honorable Steven Barrett, dated Feb. 26, 2008 (annexed as Ex. 3 to Resp. Decl.)

("2/26/08 Plea Tr.").  Justice Barrett adjudicated Morton a violent predicate felony offender.

(2/26/08 Plea Tr. 6).  Morton pled guilty to one count of first-degree robbery in violation of N.Y. Penal Law § 160.15(4), in full satisfaction of the Robbery Indictment.  (2/26/08 Plea Tr. 8).[1]  He also pled guilty to one count of second-degree bail jumping, in violation of N.Y. Penal Law § 215.56, in full satisfaction of the Bail Jumping Indictment.  Id.

As part of the plea allocution, Justice Barrett promised Morton that he would receive a sentence of seven years on the weapon charge to which he pled guilty on September 8, 2006, and five years of post-release supervision.  (2/26/08 Plea Tr. 10-11).  Also, Morton would receive a sentence of twelve years for the first-degree robbery charge, and five years of post-release supervision.  (2/26/08 Plea Tr. 11).  The sentences for the weapon charge and the robbery charge were to run concurrently.  Id.  In other words, Morton would receive, in total, a determinate sentence of twelve years in prison to be followed by five years of post-release supervision.  (2/26/08 Plea Tr. 11).  With respect to the bail jumping charge, Justice Barrett stated, "because the law requires that you receive consecutive time for bail jumping, I will offer you one and a half to three years on your plea to the . . . bail jumping consecutive to the 12 and 5."  (2/26/08 Plea Tr. 11).  Morton confirmed that he understood the consequences of pleading guilty to these offenses, including, inter alia, the waiver of his right to move to suppress evidence.  (2/26/08 Plea Tr. 11-14).  Morton confirmed that he was pleading guilty knowingly, freely, and voluntarily.  (2/26/08 Plea Tr. 14-17).

---

[1]  Justice Barrett asked Morton if he was pleading guilty to "robbery in the first degree," and to the "first count of indictment 3081/07" but incorrectly stated that the statutory provision at issue was subdivision four of "156.15" instead of "160.15."  (2/26/08 Plea Tr. 8).

C.  Sentencing

On September 3, 2008, Justice Barrett sentenced Morton, who was still represented by Spellman, to the prison terms he had promised at the plea hearing on February 26, 2008.  See Transcript of Proceedings Held Before the Honorable Steven Barrett, dated Sept. 3, 2008 (annexed as Ex. 4 to Resp. Decl.).  Because the sentence for the bail jumping charge ran consecutively to the other sentences, Morton was sentenced to a total of 13-1/2 years in prison.

D.  First Direct Appeal and Resentencing

On appeal, the New York State Supreme Court Appellate Division, First Department, affirmed the conviction in all respects, but remanded the case for resentencing with respect to the conviction for bail jumping.  People v. Morten, 68 A.D.3d 581 (1st Dep't 2009).[2]  The Appellate Division found that "the court and counsel were under the misapprehension that the court was required to impose a sentence for the bail jumping conviction that was consecutive to the sentences for both the weapon possession and robbery convictions."  Id.  However, the Appellate Division found such a consecutive sentence to be mandatory "only when the bail jumping charge relates to the crime for which the defendant jumped bail, and when the terms for both crimes are indeterminate."  Id.  Finding that "the court may not have apprehended the extent of its discretion," Morton was "entitled to resentencing."  Id. (citation omitted).  On June 23, 2010, Justice Barrett resentenced Morton so that the bail jumping sentence would run concurrently to the sentences on the weapon and robbery convictions, but denied Morton's request to reduce the sentence for the robbery conviction.  See Resp. Decl. ¶ 13.

---

[2]  Morton's name was spelled as "Morten" in this opinion.

E.  <u>Second Direct Appeal</u>

Morton appealed the judgment following the resentencing.[3]  Morton's appellate brief

argued that, "in light of [Morton's] excellent institutional record, the 12-year sentence imposed

for a robbery in which nobody was injured, is unduly harsh and should be reduced in the interest

of justice."  <u>See</u> Def. App. Br. at 9.  On April 17, 2012, the Appellate Division, First

Department, affirmed, finding Morton's sentence "not excessive."  <u>People v. Morton</u>, 94 A.D.3d

574 (1st Dep't 2012).  On June 19, 2012, the New York Court of Appeals denied Morton's

application for leave to appeal.  <u>People v. Morton</u>, 19 N.Y.3d 965 (2012).

F.  <u>Motion to Vacate Judgment of Conviction</u>

In the meantime, on October 3, 2011, Morton, acting <u>pro se</u>, filed a motion to vacate the

judgment of conviction pursuant to N.Y. Crim. Proc. Law § 440.10.[4]  Morton's Section 440.10

Motion raised two claims.  First, Morton argued that his Fourth Amendment rights were violated

when detectives came to his home to arrest him and entered without consent, an arrest warrant,

or a search warrant in violation of <u>Payton v. New York</u>, 445 U.S. 573 (1980).  <u>See</u> Section

440.10 Motion at 5, 15.  Second, Morton argued that he was deprived of the effective assistance

of counsel guaranteed by the Sixth Amendment because his trial attorney Christopher

--------

[3]  <u>See</u> Brief for Defendant-Appellant, dated Nov. 7, 2011 (annexed as Ex. 5 to Resp. Decl.) ("Def. App. Br."); Respondent's Brief, dated Feb. 29, 2012 (annexed as Ex. 6 to Resp. Decl.); Reply Brief for Defendant-Appellant, dated Mar. 9, 2012 (annexed as Ex. 7 to Resp. Decl.).

[4]  <u>See</u> Notice of Motion to Vacate Judgment, dated Oct. 3, 2011 (annexed as Ex. 8 to Resp. Decl. and Ex. 1 to Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Pet.")) ("Section 440.10 Motion"); Affirmation and Memorandum of Law in Opposition, dated July 20, 2012 (annexed as Ex. 9 to Resp. Decl.).  The Section 440.10 Motion contains additional supporting documents, including a memorandum of law and other unlabeled documents.  We cite to particular pages in the Section 440.10 Motion by the sequential page number reflected in the document as filed on the ECF system.

Spellman's performance "fell well below standards" in a number of respects – in particular his failure to visit or communicate with Morton or to file motions – and because Spellman "misled [Morton] to believe a bail jumping charge by law had to be consecutive when in fact it was not." Section 440.10 Motion at 4.

Justice Barrett denied Morton's Section 440.10 Motion on January 3, 2013.  See Decision and Order, dated Jan. 3, 2013 (annexed as Ex. 10 to Resp. Decl.) ("440.10 Order").  The decision denied Morton's Fourth Amendment claim pursuant to N.Y. Crim. Proc. Law § 440.10(3)(a), which states, in relevant part, that "the court may deny a motion to vacate a judgment when . . . [a]lthough facts in support of the ground or issue raised upon the motion could with due diligence by the defendant have readily been made to appear on the record in a manner providing adequate basis for review of such ground or issue upon an appeal from the judgment, the defendant unjustifiably failed to adduce such matter prior to sentence and the ground or issue in question was not subsequently determined upon appeal."  Justice Barrett stated that Morton had "ample time prior to his plea and sentence" to raise his Fourth Amendment claim, but "instead, he opted to plead guilty and waive his right to move to suppress any evidence that may have been obtained in violation of his constitutional rights."  440.10 Order at 5.  Justice Barrett concluded that "[h]aving failed to raise this issue prior to pleading guilty, having waived his right to move to suppress, and having failed to raise this issue on his two direct appeals, he cannot now be heard."  Id. (citing N.Y. Crim. Proc. Law § 440.10(3)(a)).

With respect to Morton's ineffective assistance of counsel claim, Justice Barrett first found that the claim was "procedurally defective" for various reasons, among them that the motion was "based solely upon [Morton's] unsworn allegations."  440.10 Order at 2-4.  Justice

Barrett also found this claim to be "meritless," noting that Morton "never claimed that he would

not have pleaded guilty but for Spellman's alleged misadvice and omissions" at the plea,

sentencing, or resentencing proceedings.  Id. at 4.  He added that, given the potential term of

imprisonment that could have been imposed had Morton been convicted on all of the charges,

"Spellman obtained a favorable plea bargain" and "it is clear why [Spellman] pursued this offer,

rather than risk a trial."  Id. at 4.  Justice Barrett concluded that Morton had "failed to allege, no

less make a prima facie showing of prejudice" and thus could not show that counsel's

performance was defective.  Id. at 5 (citations omitted).  On April 5, 2013, the Appellate

Division, First Department, denied Morton's application for leave to appeal the denial of his

Section 440.10 Motion.  See Certificate Denying Leave, dated Apr. 5, 2013 (annexed as Ex. 13

to Resp. Decl.).

G.  The Instant Petition for a Writ of Habeas Corpus

Morton filed this petition on June 10, 2013.[5]  Morton raises essentially the same two

claims as he raised in his Section 440.10 Motion.  First, he argues that his "Fourth Amendment

rights were violated when detectives came to [his] home to arrest [him]," because the detectives

"entered [his] home without consent, without an arrest warrant nor a search warrant."  Pet.

¶ 12(a) (emphasis omitted).  Second, he argues that he was "denied effective assistance of

counsel" because there were "no attorney visits, no motion filed by [Morton's attorney] during a

one year period on [Morton's] behalf," there were "no video conferences," and because "[t]he

court appearences [sic] were adjourned for an entire year from month to month without any

_____

[5]  See Pet.; Resp. Decl.; Respondent's Memorandum of Law (annexed to Resp. Decl.)
("Resp. Mem."); Petitioner's Memorandum of Law Statement, filed Nov. 13, 2013 (Docket # 15)
("Pet. Reply").

communication on Mr. Spellman's part." Id.  The petition characterizes Spellman's performance as "a pattern of neglect." Id.  Morton also asserts that Spellman "misled" Morton into believing that "a bail jumping charge by law had to be consecutive when in [] fact it was not." Id.

II.     LAW GOVERNING REVIEW OF PETITIONS BROUGHT PURSUANT TO
        28 U.S.C. § 2254

A petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For a claim to be "adjudicated on the merits" within the meaning of section 2254(d), it must "finally resolv[e] the parties' claims, with res judicata effect," and it must be "based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (citations omitted).  As long as "there is nothing in its decision to indicate that the claims were decided on anything but substantive grounds," a claim will be considered "adjudicated on the merits" even if the state court fails to mention the federal claim and cites no relevant federal case law.  Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001); accord Harrington v. Richter, 131 S. Ct. 770, 784–85 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.") (citation omitted); see also id. at 784 (section 2254(d) deference applies even "[w]here a state court's decision is unaccompanied by an explanation").

Moreover, a state court's "determination of a factual issue" is "presumed to be correct," and that presumption may be rebutted only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Habeas relief is available under the "unreasonable application" clause only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the state court's application must have been unreasonable — a standard that is met only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. Harrington, 131 S. Ct. at 786; accord id. ("[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."). In other words, to demonstrate an "unreasonable" application of Supreme Court precedent, the habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

The "determination of whether a court has unreasonably applied a legal standard depends in large measure on the specificity of the standard in question." Brisco v. Ercole, 565 F.3d 80, 89 (2d Cir. 2009). "The more general the rule, the more leeway courts have in reaching

outcomes in case-by-case determinations" inasmuch as the application of a general standard to a specific case "can demand a substantial element of judgment." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004); accord Brisco, 565 F.3d at 90 (court applying a "fact-dependent standard . . . to the facts of a specific case is . . . entitled to significant 'leeway' when [a habeas court] review[s] its decision for reasonableness") (quoting Yarborough, 541 U.S. at 664).

Only holdings of the Supreme Court are considered for purposes of determining "[c]learly established federal law." Rodriguez v. Miller, 537 F.3d 102, 106 (2d Cir. 2008) (citation omitted).  Thus, "[n]o principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief." Id. at 106-07 (citation omitted).  Where there is "[n]o holding" from the Supreme Court on the question presented, Carey v. Musladin, 549 U.S. 70, 77 (2006), or where Supreme Court cases "give no clear answer" to the question presented in the petition, Wright v. Van Patten, 552 U.S. 120, 126 (2008) (per curiam), a state court's decision can be neither contrary to nor an unreasonable application of clearly established federal law.  See Knowles v. Mirzayance, 556 U.S. 111, 122 (2009) ("[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court.") (citations and internal quotation marks omitted).

III.    DISCUSSION

A.  Fourth Amendment Claim

Payton held that the Fourth Amendment generally precludes the police from effectuating an arrest within a person's home in the absence of an arrest warrant.  445 U.S. at 576, 602-03.  Morton argues that the police violated the rule set forth in Payton, and thereby the Fourth Amendment, when they entered his apartment to arrest him without a search warrant or arrest

10

warrant and in the absence of consent or exigent circumstances.  See Pet. at 2.  Morton contends

that his young son, who answered the door when police arrived, "could not consent, and lacked

the authority to admit the police officers into [his] home at any time without [his] consent," and

that, "[a]bsent exigent circumstances," the police could not cross the threshold to his apartment

without a warrant.  Id. at 4.  In response, respondent argues that this claim is procedurally barred,

precluded by the Supreme Court's decision in Stone v. Powell, 428 U.S. 465 (1976), and fails on

the merits.  See Resp. Mem. at 3-7.  Because the claim is plainly barred by Stone, it is not

necessary to reach the other grounds raised.

      In Stone, the Supreme Court held that "where the State has provided an opportunity for

full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a

state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an

unconstitutional search or seizure was introduced at his trial."  Stone, 428 U.S. at 481-82.  The

Second Circuit, interpreting Stone, has held that "review of fourth amendment claims in habeas

petitions [can] be undertaken in only one of two instances: (a) if the state has provided no

corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state

has provided a corrective mechanism, but the defendant was precluded from using that

mechanism because of an unconscionable breakdown in the underlying process."  Capellan v.

Riley, 975 F.2d 67, 70 (2d Cir. 1992) (citing Gates v. Henderson, 568 F.2d 830 (2d Cir. 1977)

(en banc)).  An alleged Payton violation is governed by the doctrine articulated in Stone.  See,

e.g., Benton v. Brown, 537 F. Supp. 2d 584, 590–91 (S.D.N.Y. 2008); Leake v. Senkowski,

2004 WL 1464889, at *18 (S.D.N.Y. June 30, 2004) (collecting cases); Taylor v. Kuhlmann, 36

F. Supp. 2d 534, 539 (E.D.N.Y. 1999); Shaw v. Scully, 654 F. Supp. 859, 863-65 (S.D.N.Y.

1987).

Morton does not argue that New York has failed to provide a corrective procedure to redress the alleged Fourth Amendment violation in this case but merely describes the events surrounding the alleged Payton violation and argues that the police acted unconstitutionally on the day that they arrested him.  See Pet. at 2-4.  In any event, it is well-settled that New York's statutory procedure for litigating Fourth Amendment claims constitutes a sufficient "corrective procedure" under Stone.  See Capellan, 975 F.2d at 70, n. 1 ("[F]ederal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 . . . as being facially adequate.") (citations and internal quotation marks omitted).  Nor was Morton precluded from using New York's procedural mechanism for correcting Fourth Amendment because of some "unconscionable breakdown in the underlying process."  See Capellan, 975 F.2d at 70.  Had he not pled guilty, that mechanism would have been available to him.  Thus, Morton is unable to overcome the bar erected in Stone, and this aspect of his petition must fail.[6]

B.  Ineffective Assistance of Counsel Claim

"In order to prove ineffective assistance, [a petitioner] must show (1) 'that counsel's representation fell below an objective standard of reasonableness'; and (2) 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003) (quoting Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)); accord United States v. Brown, 623

---

[6]  The Court notes that the claim would fail on the merits anyway because Morton does not identify any evidence that was illegally obtained as a result of his arrest.  It is settled that "[a]n illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction."  United States v. Crews, 445 U.S. 463, 474 (1980); accord Brown v. Doe, 2 F.3d 1236, 1244 (2d Cir. 1993) ("there is no authority for barring the prosecution of a defendant who was illegally taken into custody").

F.3d 104, 112 (2d Cir. 2010); see also Massaro v. United States, 538 U.S. 500, 505 (2003) ("[A] defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial.").  In evaluating the first prong—whether counsel's performance fell below an objective standard of reasonableness—"'[j]udicial scrutiny . . . must be highly deferential,'" and the petitioner must overcome the "'presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" Bell v. Cone, 535 U.S. 685, 698 (2002) (alteration in original) (quoting Strickland, 466 U.S. at 689); see Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (according counsel a presumption of competence).  This analysis requires a court to "affirmatively entertain the range of possible reasons [petitioner]'s counsel may have had for proceeding as they did."  Cullen v. Pinholster, 131 S. Ct. 1388, 1407 (2011) (citations and internal quotation marks omitted).

To satisfy the prejudice requirement, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694; accord Lynn v. Bliden, 443 F.3d 238, 247–48 (2d Cir. 2006).  With respect to the second prong, the Second Circuit generally "requires some objective evidence other than defendant's assertions to establish prejudice."  Pham, 317 F.3d at 182 (citing United States v. Gordon, 156 F.3d 376, 380–81 (2d Cir. 1998) (per curiam)).

It is settled that "the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel."  Lafler v. Cooper, 132 S. Ct. 1376, 1384 (2012) (internal quotation marks and citation omitted).  When a petitioner seeks relief on the basis of ineffective assistance of counsel with respect to a guilty plea, the prejudice prong requires demonstrating "'a reasonable probability that, but for counsel's errors, he would not

have pleaded guilty and would have insisted on going to trial.'" Premo v. Moore, 131 S. Ct. 733,

743 (2011) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)); see also Lafler, 132 S. Ct. at 1384

("In the context of pleas a defendant must show the outcome of the plea process would have

been different with competent advice."). A petitioner who has pled guilty "must convince the

court that a decision to reject the plea bargain would have been rational under the

circumstances." Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010). As one case has noted,

"[t]his inquiry requires a fact-specific analysis that evaluates the weight of the evidence, the

consequences of various legal options, and any circumstances that may affect a decision to

plea[d]." Matos v. United States, 907 F. Supp. 2d 378, 382 (S.D.N.Y. 2012) (citations omitted);

accord Cocheekaran v. Heath, 2013 WL 1846738, at *7 (S.D.N.Y. May 2, 2013).

      "The standards created by Strickland and § 2254(d) are both highly deferential, and when

the two apply in tandem, review is doubly so." Harrington, 131 S. Ct. at 788 (internal citations

and quotation marks omitted). A petitioner "must do more than show that he would have

satisfied Strickland's test if his claim were being analyzed in the first instance . . . Rather, he

must show that the [state court] applied Strickland to the facts of his case in an objectively

unreasonable manner." Bell, 535 U.S. at 698-99. Our task on habeas review is limited,

therefore, to asking whether the state court's "rejection of this claim amounted to an

unreasonable application of the Strickland standard." Aparicio, 269 F.3d at 99 (citing 28 U.S.C.

§ 2254(d)(1)).

      Morton's petition argues that he was "denied effective assistance of counsel because of

neglect, no attorney's visits, no motions filed on petitioner [sic] behalf during a one year span,

no video conferences" and because his attorney "misled [him] to believe that his bail jumping

charge by law had to be consecutive when in fact it was not." Pet. at 4-5. Morton contends that

14

he "had no communication with [his] attorney for well over a year, including court appearances [sic]." Id. at 5. His petition also asserts that "[p]rior to [his] plea hearings, defense counsel fail[ed] to inform him about the affirmative defense [he] had in his case . . . failed to persue [sic] all defense[s] available to [him], and . . . fail[ed] to properly advise him of the plea agreement." Id. Finally, Morton asserts that his lawyer "withheld all document[s] pertaining to [his] case, police reports, statements of the witnesses, and the results of the DNA samples," and all of this amounted to "a pattern of neglect by counsel" which resulted in "a clear violation of effective assistance of counsel and a violation of due process." Id. (citing Roe v. Flores- Ortega, 528 U.S. 470, 477-78 (2000) (quoting Strickland, 466 U.S. at 694)). Morton's petition goes on to discuss applicable Supreme Court precedent and concludes by requesting an evidentiary hearing "concerning . . . [his] ineffective assistance of counsel." Id. at 6-7.

It is unnecessary to reach Morton's contentions regarding the performance of his counsel because his Sixth Amendment claim fails on the ground that he has failed to show prejudice.

The allegations regarding his attorney's performance largely amount to Morton's claim that his attorney "neglected" his case. But Morton's petition and other papers provide no showing of "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Premo, 131 S. Ct. at 743 (internal citation and quotation marks omitted). As this Court has previously noted, "in the usual case the only advantage of going to trial over pleading guilty is the possibility of acquittal or conviction of lesser charges." Cuevas v. United States, 2012 WL 3525425, at *9 (S.D.N.Y. Aug. 16, 2012). Thus, "courts have recognized that a petitioner must provide some basis for concluding that the chance of acquittal or conviction of lesser charges was sufficiently high that the petitioner would have rationally chosen to take the risk of conviction and a longer sentence that accompanies a

trial rather than accept the certainty of conviction and a generally lesser sentence that is entailed by a guilty plea." Id.; accord United States v. Horne, 987 F.2d 833, 836 (D.C. Cir.1993) (denying habeas petition challenging guilty plea on ineffective assistance grounds in part because defendant "offered nothing to suggest that he would have succeeded if he had gone to trial"); Holman v. Ebert, 2007 WL 4591718, at *5 (E.D.N.Y. Dec. 28, 2007) ("To satisfy the prejudice element of the Strickland test in the context of a guilty plea, petitioner would have to show that he would have been acquitted or at least received a shorter sentence after conviction."); Gelzer v. Fischer, 2007 WL 3539598, at *4 (E.D.N.Y. Nov. 14, 2007) (noting that Hill v. Lockhart "implied that to demonstrate prejudice, petitioner must show not only that he would have gone to trial, but that he either would have been acquitted or, if convicted, sentenced to a lesser term than he received pursuant to his guilty plea"); United States v. Carraballo, 2001 WL 111284, at *6 (S.D.N.Y. Feb. 8, 2001) (rejecting a claim of ineffective assistance of counsel, where petitioner has "presented nothing to suggest either what exculpatory evidence would have been discovered through a more thorough defense investigation, nor that a rational factfinder would have found him not guilty").

Morton's filings contain no assertion – let alone any evidence or reasoning – demonstrating that he would have elected to go to trial on the numerous charges he faced rather than plead guilty in exchange for the sentence he was promised. The closest Morton comes to such a statement is his claim that if Spellman had "given me all documents pertaining to my case I could have done legal research and more likely would have gone to trial." Section 440.10 Motion at 20. A conclusory and conditional statement of this kind, however, does not constitute the "objective evidence" generally needed to establish prejudice. Pham, 317 F.3d at 182. Putting aside the fact that Morton does not explain what type of documents might have caused

16

him to go to trial, the statement does not even contend that Morton would have gone to trial with

proper advice.  Moreover, there was objective evidence suggesting that going to trial would not

have been to Morton's advantage.  As Justice Barrett noted in his opinion denying Morton's

Section 440.10 Motion, if he had gone to trial, Morton could have faced 25 years imprisonment

on each of the robbery charges, seven years on the weapons possession charge, and four years on

the bail jumping charge.  See 440.10 Order at 4.  Also, all of these sentences could have been

ordered to run consecutively.  Id.  Given the choice Morton faced, and the absence of any

evidence in the record suggesting that he would have been acquitted, there is no basis on which

to conclude that "a decision to reject the plea bargain would have been rational under the

circumstances."  Padilla, 130 S. Ct. at 1485.[7]

---

[7] Morton at one point wrote a letter to the Clerk of the Court asking for assistance with a
FOIL request he had made to the District Attorney's office seeking his "trial folder/discovery,"
noting that he believed that the withholding of this "trial folder/discovery" constituted
"ineffective assistance of counsel."  See Letter from Tony Morton to Clerk of Court, filed Oct.
17, 2013 (Docket # 11).  To the extent this letter is construed as a discovery request, it is denied.
"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as
a matter of ordinary course," but may be permitted discovery upon a showing of good cause.
Bracy v. Gramley, 520 U.S. 899, 904 (1999); accord Drake v. Portuondo, 321 F.3d 338, 345-46
(2d Cir. 2003).  A petitioner can meet the "good cause" standard "'where specific allegations
before the court show reason to believe that the petitioner may, if the facts are fully developed,
be able to demonstrate that he is . . . entitled to relief.'"  Bracy, 520 U.S. at 908-09 (quoting
Harris v. Nelson, 394 U.S. 286, 300 (1969)) (alteration in original).  "[W]here the petitioner
provide[s] no specific evidence that the requested material would support his habeas corpus
petition," however, the Court may exercise its discretion to deny a discovery request.  Gonzalez
v. Bennett, 2001 WL 1537553, at *4 (S.D.N.Y. Nov. 30, 2001) (citing Charles v. Artuz, 21 F.
Supp. 2d 168, 170 (E.D.N.Y. 1988)); accord Hirschfeld v. Comm'r of Div. of Parole, 215 F.R.D.
464, 465 (S.D.N.Y. 2003).  Here, Morton has provided no such "specific" allegations.
Accordingly, he has not shown "good cause" to grant his request.  See, e.g., Renis v. Thomas,
2003 WL 22358799, at *1 (S.D.N.Y. Oct. 16, 2003) ("Generalized statements regarding the
possibility of the existence of discoverable material cannot yield 'good cause.'") (citing
Gonzalez, 2001 WL 1537553, at *4); accord Munoz v. Keane, 777 F. Supp. 282, 287 (S.D.N.Y.
1991), aff'd, 964 F.2d 1295 (2d Cir. 1992).  As to Morton's request for an evidentiary hearing,
Pet. at 7, Morton does not explain why a hearing is required, and thus, the request must be
denied for this reason alone.  Additionally, the Supreme Court has held that "review under

With respect to Morton's more specific assertion that Spellman was ineffective with respect to the question of how the bail jumping charge would be treated for purposes of sentencing, this contention similarly fails because of Morton's failure to show prejudice. If Morton is arguing that he would have gone to trial had his attorney properly advised him and the trial judge that the bail jumping sentence could run concurrently with other sentences, this argument makes no sense. Morton found the 13-1/2-year sentence that came with his plea a more attractive choice than a trial. He would have been even less likely to go to trial, not more likely, had his attorney negotiated a 12-year sentence rather than a 13-1/2-year sentence. If Morton is arguing instead that he was prejudiced by receiving 13-1/2-year sentence at the time of his plea in 2008 rather than a 12-year sentence, that prejudice was completely cured when he was resentenced to a concurrent sentence on the bail jumping charge, which resulted in a 12-year sentence.

In sum, because Morton has failed to show prejudice from any alleged ineffectiveness on his attorney's part, the state court's decision to deny his ineffective assistance of counsel claim did not reflect "an unreasonable application of . . . the Strickland rule." Premo, 131 S. Ct. at 740.[8]

———————————————

§ 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Pinholster, 131 S. Ct. at 1398.

[8]  We note that Morton complains in his reply brief that counsel failed to "object" to the fact that the plea allocution on the robbery charge "did not indicate that what appeared to be a weapon was used as a deadly weapon." Pet. Reply at 1 (citing People v. Hall, 50 A.D. 3d 1467 (4th Dep't 2008)). This claim was not made in his original Section 440.10 motion. Because it is record-based and was not raised in either of Morton's direct appeals, he would not be able to raise this claim in a collateral motion in state court now. See N.Y. Crim. Proc. Law § 440.10(c)(2) (barring collateral review of claims that could have been raised on direct appeal). Because Morton has no further recourse with respect to this claim in state court, the claim is "deemed" exhausted and is procedurally barred. See, e.g., Gray v. Netherland, 518 U.S. 152,

IV.  <u>CONCLUSION</u>

     For the foregoing reasons, the petition for a writ of habeas corpus (Docket # 1) should be

denied.

## **PROCEDURE FOR FILING OBJECTIONS TO THIS**
## **REPORT AND RECOMMENDATION**

     Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have fourteen (14) days including weekends and holidays from service of

this Report and Recommendation to serve and file any objections.  <u>See also</u> Fed. R. Civ. P. 6(a),

(b), (d).  Such objections (and any responses to objections) shall be filed with the Clerk of the

Court, with copies sent to the Hon. Analisa Torres, and to the undersigned, at 500 Pearl Street,

New York, New York 10007.  Any request for an extension of time to file objections must be

directed to Judge Torres.  If a party fails to file timely objections, that party will not be permitted

to raise any objections to this Report and Recommendation on appeal.  <u>See</u> <u>Thomas v. Arn</u>, 474

U.S. 140 (1985); <u>Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd &</u>

<u>Carwile, P.C.</u>, 596 F.3d 84, 92 (2d Cir. 2010).

---

162 (1996).  In any event, it would fail on the merits whether viewed as an attack on the
sufficiency of his plea allocution or as an attack on counsel's performance.  The case cited by
Morton, <u>Hall</u>, held that the defendant's allocution was insufficient because a BB gun was
involved in that case and it had not been made clear to the defendant that the particular
subsection of Penal Law § 160.15 that he pled to had as an element that the defendant "[u]ses or
threatens the immediate use of a dangerous instrument."  50 A.D.3d at 1468 (alteration in
original).  Morton, however, pled guilty to the subsection that states that a defendant is guilty of
first degree robbery if the defendant "[d]isplays what appears to be a pistol, revolver, rifle,
shotgun, machine gun or other firearm."  N.Y. Penal Law § 160.15(4).  (2/26/08 Plea Tr. 8).
During the plea allocution before Justice Barrett on February 26, 2008, Morton specifically
acknowledged that he "displayed what appeared to be a firearm" during the robbery.  (2/26/08
Plea Tr. 15).

Dated: February 4, 2014
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copy sent to

Tony Morton
# 08-A-6055
Downstate Correctional Facility
P.O. Box F
Red Schoolhouse Road
Fishkill, NY 12524-0445


Counsel by ECF

20